# Philadelphia *versus* The Lombard and South Streets Passenger R. R. Co.

Where a charter was granted to a company for the purpose of building and using a passenger railway in certain streets, subject "to all the ordinances of the councils of the said city," the company, by accepting their charter in the terms in which it was granted, agreed to obtain the consent of the councils to their work, agreeably to the ordinance of the city.

BILL IN EQUITY at NISI PRIUS. Motion for preliminary injunction.

The opinion of the court was delivered by

WOODWARD, J.—The defendants' company was incorporated for the purpose of building and using a passenger railway on Lombard and South Streets, by an act of assembly of 16th May, 1861, the nineteenth section of which provided, among other things, "that the said company shall be subject to all the ordinances of the councils of the said city."

At the date of the incorporating act many ordinances of the city councils were in force relating to the streets of the said city, and among others, that of 28th February, 1860, which provided that it shall not be lawful to remove the cobble pavement of any of the highways of the city of Philadelphia, for the purpose of laying down rails for passenger purposes, until the assent of the councils of Philadelphia shall be procured thereto.

This bill, filed on behalf of the city, complains that the company are proceeding to remove the cobble pavement of Lombard and South Streets, and to build their road in said streets, without having applied for, or obtained the assent of the councils, and I am moved to grant, upon proper injunction affidavits, a special or preliminary injunction to stop the work.

In the first acts incorporating passenger railway companies, the consent of the city councils was not expressly provided for, but it was to be inferred if they did not dissent within thirty days after the passage of the act. This condition was in most if not in all of the incorporating acts of 1857 and 1858, and in some of 1859. Whether it has been expressed in any since the ordinance of 1860 was passed, I am not informed, but it certainly is not in the act of 1862, under which the defendants are organized. It is apparent from the numerous acts I have consulted, that the legislature recognized the right of city councils to supervise the streets of the city, and to say whether passenger railways should be laid in them or not. Granting that the State might, in virtue of her sovereignty, authorize

[Philadelphia *v.* The Lombard and South Streets Passenger R. R. Co.]

companies to construct railways in the streets of the city without consent of councils, it has not been the general policy of her legislature to do so. How, then, are we to account for the absence of all allusion to this subject in the act of 1861, except by supposing that the legislature was informed of the ordinance of 1860, and meant to subject the defendants to it as well as to other ordinances? The language of the tenth section is "all the ordinances." The defendants confess themselves subject to the ordinances concerning grading, curbing, paving, and lighting the streets, and claim to have conformed themselves to all these, but against this particular ordinance requiring the consent of councils they rebel.

I have listened attentively to all that their very able counsel have urged in defence of their position, and it seems to me to amount to this: That the State legislature, having the right to authorize railways to be laid upon streets of the city, and having empowered this company to occupy two particular streets, the title of the company is complete without any assent of the city councils; that it is not a municipal function to judge of the propriety of laying a railroad in a street, and that the ordinance on that subject was impertinent and void, in so far as it stipulates for assent of councils to the exercise of a franchise held from the State, and, therefore, it is not to be considered as one of the ordinances to which the legislature meant to subject the company.

I am not about to question the power of the State to take a street of the city for the purposes of a railroad leading from the interior, and constructed as a thoroughfare of trade and commerce. That has been settled by judicial decision. Nor will I, at this time, consider whether the doctrines applied to such a highway are applicable to these municipal railways, that have their termini within city limits, and that are neither constructed nor used for general purposes of trade and travel, but only for the specific purpose of travelling about the town. Let both points be conceded. Be it that the State is as competent to plant a passenger railway in every street of the city as she is to penetrate the city with a few necessary railroads from without, yet it is enough for this case that she has not exercised that power. Until she overrides the local authorities, their jurisdiction is not ousted. One of the most obvious purposes for which the city was chartered was the police of the streets. To maintain and preserve them as public highways, the power of taxation was conferred upon the municipality, and it has been largely exercised. Every property holder has a direct and vested interest in the maintenance of this municipal authority over the streets. So long as the State defers to this authority, private corporations must respect it. In one form

[Philadelphia *v*. The Lombard and South Streets Passenger R. R. Co.]

or other the legislature have generally, if not uniformly, recognized the municipal authority over the streets, in the very act of granting charters to railway companies; before 1860 by express requisition of councils' consent; since, by recognition of the ordinance of that year which stipulated for it.

This is not, therefore, an instance of conflict betwixt the State and the city. If it were, the city would have to succumb to the superior power of the State. But both State and city are agreed that passenger railways shall be built in the streets only by consent of councils. The city has said so by subjecting its act of incorporation to the ordinance of 1860, as if it had been written into its very texture.

What avails it, then, that the State might, in the plenitude of her sovereignty, have disregarded the city ordinance? It is a final answer that she has not chosen to do so. Nor can the ordinance be impeached as beyond the jurisdiction of the municipality; for it not only belongs to the most obvious of all municipal functions, but it has obtained, in the instance before us, the express sanction of the legislature. If it were valid in no other sense, it would have to be treated as valid here.

Counsel urge that this is a contest between rival companies, and that such a construction should be favored as would encourage competition and keep down monopoly.

I see no rival company upon the record. The city of Philadelphia is the plaintiff, and appears here by its appropriate counsel, and no other party plaintiff is represented at all. In such a case the general doctrine that is applied to other private corporations would seem to be applicable. The defendants claim a franchise from the commonwealth. They must take it with just such conditions as the law prescribes, or not take it at all. The courts cannot relieve them from what the legislature has clearly imposed. By accepting their charter on the terms in which it was granted, they agreed to obtain the consent of the councils to the work, and it must be had, or the law must be altered, or their work must stop.

Let a decree for special injunction be entered, on plaintiff giving bond in $5,000, with security, to be approved by Prothonotary Snowden.